UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BERNICE HICKS,

  Plaintiff,

 v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

  Defendant.

Case No. 1:13-cv-425

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Bernice Hicks filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In July 2009, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of July 31, 2003, due to physical and mental impairments. (Tr. 134, 144). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On July 14, 2011, ALJ John Pope held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. (Tr. 12-31). On August 25, 2011, ALJ

1

Pope denied Plaintiff's applications in a written decision. (Tr. 16-28). Plaintiff's now seeks judicial review of the denial of her applications for benefits.

Plaintiff was 45 years old at the time of the administrative hearing and when ALJ Pope issued his decision. She has seventh grade education and past relevant work as a housekeeper/cleaner. She alleges disability since July 31, 2003 due to a combination of impairments, including bipolar disorder, anxiety disorder, depression, panic attacks, chronic obstructive pulmonary disease (COPD), hepatitis C, numbness/tingling in both hands, residuals from a metal plate and pins in her face from a car accident in 1987, and a history of alcohol and cocaine dependence. She is insured for Social Security Disability benefits through September 30, 2004.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "bipolar disorder, anxiety, chronic obstructive pulmonary disease (COPD), Hepatitis C, alcohol and cocaine dependence." (Tr. 18). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

She is limited to simple, unskilled work that is relatively static and requires no more than superficial contact with others. She must avoid concentrated exposure to extreme heat, extreme cold, and pulmonary irritants. She may only occasionally climb ramps, stairs, ladders, ropes, or scaffolds.

(Tr. 20). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is able to perform her past relevant work as a housekeeper/cleaner. Accordingly, the ALJ determined that Plaintiff is not under

2

disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) failing to develop a "full and fair" record, 2) failing to properly account for all Plaintiff's impairments in her RFC; 3) failing to account for Plaintiff's moderate limitations in concentration, persistence and pace, and 4) failing to fairly consider Plaintiff's lack of health insurance and inability to afford treatment and/or her difficulties with transportation. Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is substantially supported**

As noted above, Plaintiff's date last insured is September 30, 2004. Thus, Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. Plaintiff's alleged onset date is July 31, 2003. Accordingly, in order to be entitled to DIB benefits, Plaintiff must establish that she is disabled during the relevant period, *i.e.* July 31, 2003 through September 30, 2004. Plaintiff recognizes that the "medical evidence for the time period from her alleged onset date of July 31, 2003 through her date last insured of September 30, 2004 is not very strong, and thus it is her SSI claim which is more viable." (Doc. 2). The undersigned agrees.

*1. Development of the Record*

Plaintiff argues first that the ALJ failed to fully and fairly develop the record. Specifically, Plaintiff contends that ALJ Pope complained that Dr. Holditch's progress notes were illegible. (Tr. 25). As such, Plaintiff maintains that the ALJ had a duty to contact Dr. Holditch for clarification of his progress notes, objective findings, and diagnoses made. Plaintiff further contends that the ALJ had a duty to obtain the records from the University of Cincinnati Medical Center ("University Hospital"), including from

5

its Hand Clinic and psychiatric emergency services. Plaintiff also argues that the ALJ should have obtained the actual progress notes from the case managers and psychiatrist at Talbert House and Mental Health Access Point (MHAP). Plaintiff's contentions lack merit.

With respect to Dr. Holditch, in his evaluation of Plaintiff's credibility, the ALJ noted that Plaintiff's "primary care clinic's notes were mostly illegible when it comes to diagnosis." The ALJ further noted the infrequent visits did not support Plaintiff's claims of disability. Notably, the record contains treatment of notes from the Northside Health Center from June 2004 through March 2011. As noted by the ALJ, the records indicate that Plaintiff was seen one to three times a year during that period. (Tr. 238-257, 322-324).

Moreover, Plaintiff testified that she treats with Dr. Holditch at Northside Health Center, visiting once every three months. (Tr. 42-43). She stated that Dr. Holditch orders blood work to ensure that her liver function is not being adversely affected by her Hepatitis C. (Tr. 43). She further testified that the physicians at Northside Health Center also prescribe ibuprofen to help with the constant pain in her face. (Tr. 44-45, 56-57). The physicians at Northside Health Center recommended that she do certain exercises to help get the feeling back in her hands, but those exercises have not been successful. (Tr. 42-43). Plaintiff testified that she takes medication for her high cholesterol and has two inhalers to treat her chronic bronchitis and COPD. (Tr. 44-45).

Additionally, while the ALJ found the notes to be illegible when it comes to a "diagnosis", the ALJ's decision indicates that he considered the legible records and the longitudinal treatment record and medical evidence from Northside Health Center,

where Plaintiff treated with Dr. Holditch. (Tr. 22, 23). The ALJ noted that the records showed that Plaintiff was seen for routine care, including prescription refills, lab tests and treatment for sexually transmitted disease.

Accordingly, the undersigned finds that remand for clarification or supplementation of Dr. Holditch's treatment notes is not required. Dr. Holditch's handwritten treatment notes are not so illegible that this Court cannot determine whether substantial evidence supports the ALJ's findings regarding them. For the reasons outlined above, the undersigned finds that substantial evidence supports the ALJ's conclusion that Dr. Holditch's treatment does not support Plaintiff's claims of disability, and as such, the ALJ was not required to recontact Dr. Holditch in order to render his decision. *See Ferguson,* 628 F.3d at 272–74; *Lovelace v. Astrue,* No. 10–109, 2011 U.S. Dist. LEXIS 72922 at *6–8 (E.D.Tenn. July 7, 2011) (although records largely illegible, no error where ALJ was able to discern that basis for treating physician opinion was subjective complaints rather than objective medical findings).

With respect to the ALJ's failure to obtain records from University Hospital and emergency room visits, Plaintiff's argument is also without merit. As noted by the Commissioner, it is ultimately Plaintiff's burden to ensure that medical evidence is gathered and turned over to the agency. See 20 C.F.R. § 416.912(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your case."); see also 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003) (comments to final rule) ("You shoulder the

dual burdens of production and persuasion through step 4 of the sequential evaluation process. (*See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987)."). While the Agency helps claimants gather their records, Plaintiff has the ultimate burden to prove she is disabled. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) ("The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. § 423(d)(1)(A).").

Moreover, the ALJ does not have a particularly special or heightened duty to develop the record when Plaintiff has retained an attorney to help her present her case. *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) ("Only under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record."). Here, Plaintiff had an attorney represent her during the administrative process and she appeared with counsel at the hearing in July 2011. (Tr. 32). Notably, Plaintiff's attorney told the ALJ at the beginning of the hearing that the record was completed (Tr. 35; "ALJ: Is the record complete, counsel? ATTY: Yes Judge.").

In light of the foregoing, the undersigned finds that Plaintiff's first assignment of error should be overruled, because the ALJ acted reasonably and adequately developed the record.

2. *Consideration of Plaintiff's Impairments*

Plaintiff's next assignment of error asserts that the ALJ failed to address whether Plaintiff's numbness and tingling in her hands and fingers was a "severe" impairment.

8

Additionally, Plaintiff asserts that the ALJ failed to properly account for this impairment in his RFC assessment. Plaintiff's contention is unavailing.

First, contrary to Plaintiff's assertion, the ALJ properly considered Plaintiff's complaints of numbness. Notably, Plaintiff admits that the ALJ did mention this impairment later on in the decision, where he stated that he "does not find a medically determinable impairment at this time." (Tr. 25). In this regard, the ALJ noted that despite complaints of numbness in her hands, Plaintiff estimated she could lift 20 pounds and she did "exercises with her hands." (Tr. 21). Moreover, at a consultative examination with Martin Fritzhand, M.D., in September 2009, the ALJ noted that Plaintiff had a "completely normal" neurological exam and "grasp strength and manipulative ability were well preserved bilaterally. (Tr. 23, 285). Plaintiff had no abnormalities in terms of picking up large or small objects, and Dr. Frtizhand did not note any limitations with respect to writing, picking up keys or coins, manipulating buttons or zippers, or opening doors or jars. (Tr. 23, 285-286, 291). Dr. Fritzhand wrote that Plaintiff had "no difficulty reaching, grasping, and hanging objects." (Tr. 23, 291). While the ALJ noted later complaints of numbness in two fingers, he also explained that there were "no nerve conduction studies or objective examination findings" that substantiated these complaints.

Next, even assuming the record establishes that Plaintiff was in fact diagnosed with radial nerve palsy or peripheral neuropathy, a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment). Here, Plaintiff does not offer any

objective medical evidence establishing that such impairments resulted in any functional limitations. Further, the mere existence of an impairment does not establish that Plaintiff was significantly limited from performing basic work activities for a continuous period of time. *Despins v. Commissioner of Social Security,* 257 F. App'x 923, 930 (6th Cir.2007) (citing *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir.1988)). When the record does not contain any reports, doctor statements or other information regarding a plaintiff's physical limitations or the intensity, frequency, and duration of pain associated with a condition, the Sixth Circuit has regularly found substantial evidence to support a finding of no severe impairment. *See Long v. Apfel,* 1 F. App'x 326, 331 (6th Cir.2001) (citing *Higgs,* 880 F.2d at 860; *Maloney v. Apfel,* No. 99–3081, 2000 WL 420700 (6th Cir. Apr.14, 2000); *Foster v. Sec'y of Health & Human Servs.,* No. 88–1644, 1990 WL 41835 (6th Cir. Apr.11, 1990)).

More importantly, even if the ALJ erred in not finding Plaintiff's hand and finger numbness to be a "severe" limitation, such error was harmless. This is because the regulations require that if one "severe" impairment exists, all impairments—severe or otherwise—must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523, 416.923, 404.1545(e). Thus, where an ALJ errs in finding a particular impairment "non-severe" in step two of the analysis, the error is harmless if the ALJ finds at least one severe impairment and continues to address each impairment in determining the claimant's RFC. *Meadows v. Comm'r of Soc. Sec.,* No. 1:07cv1010, 2008 WL 4911243, at *13 (S.D.Ohio 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir.1987)). Here, the ALJ's decision indicates that he properly considered and addressed all of Plaintiff's severe and non-severe impairments

in determining her RFC. (Doc. 22, 21–22). Accordingly, the undersigned finds that substantial evidence supports the ALJ's decision in this regard.

*3. Determination of Mental RFC*

Plaintiff's third assignment of error asserts that the ALJ's RFC finding does not sufficiently account for Plaintiff's "moderate" limitations in concentration, persistence and pace. Here, ALJ Pope found that Plaintiff has moderate difficulties with regard to concentration, persistence, or pace, yet the only limitations the ALJ provided in the RFC to account for psychological impairments were "simple, unskilled work that is relatively static and requires no more than superficial contact with others." (Tr. 19-20).

Citing *Ealy v. Commissioner,* 594 F.3d 504 (6th Cir.2009), however, Plaintiff asserts that the ALJ's hypothetical question failed to properly accommodate Plaintiff's moderate limitations due to his mental impairments. In *Ealy,* the Sixth Circuit found that where medical source opinions specifically limited Plaintiff's ability to sustain attention and imposed restrictions in pace, speed and concentration, the ALJ's "streamlined" hypothetical omitting those restrictions was insufficient. *Id.* Notably, however, several post-*Ealy* decisions declined to adopt a bright line rule that a limitation to "simple repetitive tasks" in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, and pace. *See Steed v. Astrue,* No. 4:11 CV204, 2012 WL 1097003, at *9 (N.D.Ohio Mar.30, 2012); *Jackson v. Comm'r of Soc. Sec.,* No. 1:10CV763, 2011 WL 4943966, at *4 (N.D.Ohio Oct.18, 2011). Here, no medical source imposed any restrictions relating to pace, speed and concentration, as in *Ealy,* and Plaintiff offers no additional evidence or argument in

support of this contention. Accordingly, Plaintiff's assertion should be overruled in this regard.

### 4. Credibility Assessment

Last, Plaintiff asserts that in determining what weight to give to Plaintiff's credibility, the ALJ failed to fairly consider Plaintiff's lack of health insurance and inability to afford treatment or her difficulties with transportation. Specifically, Plaintiff asserts that the ALJ noted in his decision that Plaintiff often reported stopping her medications, and "seems to have implied that this was part of the reason for her debility or that this negatively affected her credibility." (Tr. 22-24). Plaintiff notes that she had no health insurance and could not afford her medications, so at times she would run out of her medications and be unable to obtain refills. (Tr. 246, 326-327, 328, 333, 338). Plaintiff's contentions lack merit.

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001); *Kirk v. Sec. of H.H.S.,* 667 F.2d 524, 538 (6th Cir.1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir.1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir.1984)). Social Security Regulation 96–7p describes the requirements by which the ALJ must abide in rendering a credibility determination:

>It is not sufficient for the adjudicator to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. (emphasis added).

While the ability to afford treatment is a factor in determining the claimant's credibility, it is not the only factor in the evaluation. In this regard, the ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96–7p.

Here, the ALJ properly assessed Plaintiff's credibility in light of the above requirements. As noted by the Commissioner, in accordance with the regulations, the ALJ discussed Plaintiff's testimony regarding the frequency and intensity of her symptoms, her medications and side effects, and her treatment history. (Tr. 17-27). See Soc. Sec. Ruling 96-7p, 1996 WL 374186. The ALJ found Plaintiff's testimony less than fully credible because other evidence did not support complaints of the severity

13

she alleged (Tr. 17-27). *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 543 (6th Cir. 2007) ("[T]he record is replete with medical evidence that Cruse's symptoms were not as severe as she suggested."). As detailed above, although Plaintiff alleged disability in part due to manipulative limitations, Plaintiff had a "completely normal neurological exam, grasp strength and manipulative ability were well preserved bilaterally, she had "no difficulty reaching, grasping, and hanging objects" (Tr. 23, 285, 291). There were "no nerve conduction studies or objective examination findings" that substantiated her complaints. (Tr. 24). *Gist v. Sec'y of HHS*, 736 F.2d 352, 358 (6th Cir. 1984) ("The ALJ also relied upon the fact that Gist's testimony was not well supported by the medical evidence.") The ALJ also noted that Plaintiff had normal pulmonary function studies. (Tr. 23). *See Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990) ("Simply stated, though Moon alleges fully disabling and debilitating symptomatology, the ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

The ALJ also properly considered Plaintiff's use of alcohol and illegal drugs in evaluating her credibility. The record indicates that Plaintiff was not always honest about her alcohol and drug abuse. For example, on March 9, 2011, Plaintiff said she was continuing to "use alcohol on binges every couple of weeks." (Tr. 338). Just 6 days later, on March 15, 2011, she told her therapist that she hadn't used alcohol or crack since March 2010. (Tr. 25, 328). And in December 2010, she said she had been using alcohol and crack daily since November 2009. (Tr. 25, 324). Plaintiff acknowledged that

14

her "alcohol use and my mental health go hand in hand," suggesting that when she was sober, and compliant with treatment advice, she had good mental health. (Tr. 336).

Moreover, the ALJ properly considered the fact that Plaintiff's physical and mental impairments did not prevent her from engaging in a wide variety of daily activities (Tr. 18, 21, 26). See Soc. Sec. Ruling 96-7p, 1996 WL 374186. Plaintiff reported that she could do light housework such as preparing food, doing the dishes, doing laundry, and straightening up. (Tr. 18). *See Smith v. Comm'r of Soc. Sec.*, No. 1:09–cv–526, 2010 WL 5464889, at *7 (S.D. Ohio Aug. 24, 2010) (Wehrman, MJ) ("the ALJ also properly considered that plaintiff engaged in a variety of daily activities, and it was appropriate for him to consider this factor in making his credibility finding").

In light of the foregoing, to the extent the ALJ's decision does not indicate the he considered Plaintiff's lack of insurance and/or inability to afford treatment, such an omission constitutes harmless error because the ALJ based Plaintiff's credibility on various factors, not just on Plaintiff's ability to afford medical treatment.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

        *s/Stephanie K. Bowman*
        Stephanie K. Bowman
        United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BERNICE HICKS,                                                    Case No. 1:13-cv-425

       Plaintiff,                                              Dlott, J.
                                                                  Bowman, M.J.
   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  See *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).